## SILVERTHORNE LUMBER COMPANY, INC., ET AL. *v.* UNITED STATES.

#### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF NEW YORK.

No. 358.  Argued December 12, 1919.—Decided January 26, 1920.

The Fourth Amendment protects a corporation and its officers from compulsory production of the corporate books and papers for use in a criminal proceeding against them, when the information upon which the subpœnas were framed was derived by the Government through a previous unconstitutional search and seizure, planned and executed by its officials under color of a void writ; provided the defense of the Amendment be seasonably interposed, and not first raised as a collateral issue at the trial of the indictment.  P. 391. *Weeks* v. *United States*, 232 U. S. 383, followed.  *Adams* v. *New York*, 192 U. S. 585, distinguished.

The rights of a corporation against unlawful search and seizure are to be protected even if it be not protected by the Fifth Amendment from compulsory production of incriminating documents.  P. 392. Reversed.

THE case is stated in the opinion.

*Mr. William D. Guthrie*, with whom *Mr. Henry W. Killeen, Mr. James O. Moore, Mr. Frederic D. McKenney* and *Mr. Myer Cohen* were on the briefs, for plaintiffs in error.

*Mr. Assistant Attorney General Stewart*, with whom *Mr. W. C. Herron* was on the brief, for the United States:

The question whether the subpœnas authorized an unreasonable search and seizure is separate from the question whether obedience would unconstitutionally compel self-incrimination.  The Fourth and Fifth Amendments are distinct.  *Hale* v. *Henkel*, 201 U. S. 43, 71, 72; *Wilson* v. *United States*, 221 U. S. 361, 371.

The subpœnas are as specific as was reasonably possible. A subpœna *duces tecum*, like a search warrant, must necessarily be, to some extent, a demand for discovery. *Consolidated Rendering Co.* v. *Vermont*, 207 U. S. 541, 553, 554; *Wilson* v. *United States, supra,* 376; *Wheeler* v. *United States,* 226 U. S. 478. Whether the terms of a subpœna violate the requirements of the Fourth Amendment can not be determined by its effect upon business convenience of the corporation.

The validity of an arrest or seizure is to be determined by the condition obtaining when objection is made. If then valid, the fact that a prior arrest or seizure, effective in bringing about the valid action, was entirely or partially illegal is immaterial and tenders a collateral issue. This rule is firmly established. *Gelston* v. *Hoyt,* 3 Wheat. 246, 310; *Wood* v. *United States,* 16 Pet. 342, 359; *Mahon* v. *Justice,* 127 U. S. 700, 708; *Pettibone* v. *Nichols,* 203 U. S. 192, 216, 217; *Kelly* v. *Griffin,* 241 U. S. 6, 12, 13.

Where liberty of the person is involved, a valid detention is not affected by prior illegal arrests even though the present detention is made possible solely through them. Papers and books are not entitled to any greater immunity. *Adams* v. *New York,* 176 N. Y. 351, 358; *s. c.* 192 U. S. 585, 594–598; *Perlman Rim Corporation* v. *Firestone Tire Co.,* 244 Fed. Rep. 304; affd. 247 U. S. 7, 15; *United States* v. *Hart,* 214 Fed. Rep. 655; *Stroud* v. *United States,* 251 U. S. 15; *Kerrch* v. *United States,* 171 Fed. Rep. 366; *Johnson* v. *United States,* 228 U. S. 457; *United States* v. *Wilson,* 163 Fed. Rep. 338; *New York Central R. R. Co.* v. *United States,* 165 Fed. Rep. 833; *United States* v. *McHie,* 196 Fed. Rep. 586; *In re Rosenwasser Bros.,* 254 Fed. Rep. 171.

Certain decisions, where a motion to return papers was granted or an impounding order refused, can all, with one exception, be explained upon the ground that the

papers would not have been admissible in evidence as against a claim of immunity under the Fifth Amendment, and, hence, to bring in or retain them would have been idle. *United States* v. *Mills,* 185 Fed. Rep. 318; *United States* v. *McHie,* 194 Fed. Rep. 894; *United States* v. *Mounday,* 208 Fed. Rep. 186; *United States* v. *Jones,* 230 Fed. Rep. 262; *United States* v. *Abrams,* 230 U. S. 313; *United States* v. *Friedberg,* 233 Fed. Rep. 313; *Veeder* v. *United States,* 252 Fed. Rep. 414; *In re Marx,* 255 Fed. Rep. 344. The one exception is the case of *In re Tri-State Coal & Coke Co.,* 253 Fed. Rep. 605, where the court clearly overlooked the rule that a corporation can not plead immunity from self-incrimination and that therefore the books, etc., in question, in so far as relevant, should have been retained by the court, irrespective of the invalidity of the search warrant.

*Weeks* v. *United States,* 232 U. S. 383, is, in so far as the Fourth Amendment is concerned, a case where the trial court should have refused to retain custody of the papers, not because of anything connected with the original unlawful seizure, but because of the defendant's claim of immunity under the Fifth Amendment, the papers being the private papers of an individual seized at his residence. We respectfully submit, therefore, that according to the settled principles of the law the subsequent valid subpœnas issued by the court in the case at bar were not in any way vitiated or weakened in authority or effect by reason of the prior illegal seizure.

A corporation, either state or federal, can not plead immunity from self-incriminating testimony under the Fifth Amendment as to its books and papers. *Hale* v. *Henkel, supra,* 74, 75; *Nelson* v. *United States,* 201 U. S. 92; *Alexander* v. *United States,* 201 U. S. 117; *American Tobacco Co.* v. *Werckmeister,* 207 U. S. 284; *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322, 347–349; *Wilson* v. *United States, supra,* 382, 383; *American Lithographic*

*Co.* v. *Werckmeister*, 221 U. S. 603, 611; *Baltimore & Ohio R. R. Co.* v. *Interstate Commerce Comm.*, 221 U. S. 612, 622, 623; *Wheeler* v. *United States, supra*, 489.

This has been the uniform rule of the lower federal courts, so far as we have been able to discover. *International Mining Co.* v. *Pennsylvania R. R. Co.*, 152 Fed. Rep. 557; *United States* v. *Philadelphia & Reading Ry. Co.*, 225 Fed. Rep. 301; *Orvig* v. *New York & Bermudez Co.*, 229 Fed. Rep. 293; *In re Rosenwasser Bros., supra; New York Central R. R. Co.* v. *United States*, 165 Fed. Rep. 833. The decisions were not rested on the special right of the State to inquire into the abuse of franchises granted by itself, through proceedings in the nature of *quo warranto*. The United States is not foreign to the several States in the sense that it cannot effectively execute its laws as to corporations doing business under state charters.

The Fifth Amendment is coextensive with the common law. What the latter granted or grants, the Amendment secures, no more, no less. *State* v. *Quarles*, 13 Arkansas, 307, 311; *State* v. *Fuller*, 34 Montana, 12, 19. Therefore, when this court decided that a corporation has no constitutional immunity from self-incrimination, it necessarily decided that it had no common-law immunity. This is clearly brought out in the *Wilson Case*, 221 U. S. 386, where the court cited the English cases and held them not controlling.

In *Twining* v. *New Jersey*, 211 U. S. 78, the question whether the privilege against self-incrimination is included in the legal content of the term "due process of law," mooted in *Adams* v. *New York* and the *Consolidated Rendering Co. Case*, was fully considered, and it was held that it was not.

If a corporation is not entitled at any time or under any circumstances to plead compulsory self-incrimination as to the books and papers,—if it is not entitled as to

such books and papers to the privileges guaranteed by the Fifth Amendment,—then it can not indirectly obtain the benefit of this Amendment by objecting to the manner in which the Government got its information resulting in perfectly lawful compulsory production. The case does not differ from one where the witness does not plead self-incrimination, as to which see *Blair* v. *United States,* 250 U. S. 273. Such a witness could be compelled to produce relevant testimony, though the knowledge that he had it and of its precise extent had been derived from illegal acts of public officials.

Illegal action of subordinate public officials can not forever prevent the United States from securing by legal process relevant evidence of a violation of its laws where no right under the Fifth Amendment can be successfully set up. *Flagg* v. *United States,* 233 Fed. Rep. 481, 487; *Adams* v. *New York, supra,* 597, 598. In *Weeks* v. *United States, supra,* there was a denial by the court of a petition for the return of the papers. This amounted to the issuance by the court of a subpœna *duces tecum* for them (see *Kelly* v. *Griffin, supra,*) or to an impounding order, and hence to compulsory process for their production as evidence. It was for this reason that this court reversed the judgment, and not because of their reception as evidence. And this seems to be the view taken by all the lower federal courts who have had occasion to consider the matter, except the Court of Appeals for the Second Circuit. See, *e. g., Lyman* v. *United States,* 241 Fed. Rep. 945; *Rice* v. *United States,* 251 Fed. Rep. 778; *Laughter* v. *United States,* 259 Fed. Rep. 94; *Flagg* v. *United States,* 233 Fed. Rep. 481; *Fitter* v. *United States,* 258 Fed. Rep. 567. Cf. *Linn* v. *United States,* 251 Fed. Rep. 476, 480; *New York Central R. R. Co.* v. *United States,* 165 Fed. Rep. 833. The Lumber Company, not being entitled to object under the Fifth Amendment to the use as evidence

of the papers in question, can not object to lawful, sufficiently definite subpœnas to produce them because the knowledge of their existence and of their contents was derived from a prior illegal seizure. To sanction such objection would be to offer a premium to a witness who could successfully conceal from the State the possession of relevant evidence of the violation of its criminal laws.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a writ of error brought to reverse a judgment of the District Court fining the Silverthorne Lumber Company two hundred and fifty dollars for contempt of court and ordering Frederick W. Silverthorne to be imprisoned until he should purge himself of a similar contempt. The contempt in question was a refusal to obey subpœnas and an order of Court to produce books and documents of the company before the grand jury to be used in regard to alleged violation of the statutes of the United States by the said Silverthorne and his father. One ground of the refusal was that the order of the Court infringed the rights of the parties under the Fourth Amendment of the Constitution of the United States.

The facts are smple. An indictment upon a single specific charge having been brought against the two Silverthornes mentioned, they both were arrested at their homes early in the morning of February 25, 1919, and were detained in custody a number of hours. While they were thus detained representatives of the Department of Justice and the United States marshal without a shadow of authority went to the office of their company and made a clean sweep of all the books, papers and documents found there. All the employees were taken or directed to go to the office of the District Attorney of the United States to which also the books, &c., were taken at once. An application was made as soon as might be to the District

Court for a return of what thus had been taken unlawfully. It was opposed by the District Attorney so far as he had found evidence against the plaintiffs in error, and it was stated that the evidence so obtained was before the grand jury. Color had been given by the District Attorney to the approach of those concerned in the act by an invalid subpœna for certain documents relating to the charge in the indictment then on file. Thus the case is not that of knowledge acquired through the wrongful act of a stranger, but it must be assumed that the Government planned or at all events ratified the whole performance. Photographs and copies of material papers were made and a new indictment was framed based upon the knowledge thus obtained. The District Court ordered a return of the originals but impounded the photographs and copies. Subpœnas to produce the originals then were served and on the refusal of the plaintiffs in error to produce them the Court made an order that the subpœnas should be complied with, although it had found that all the papers had been seized in violation of the parties' constitutional rights. The refusal to obey this order is the contempt alleged. The Government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its right to avail itself of the knowledge obtained by that means which otherwise it would not have had.

The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the Government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the Constitution covers the physical possession but not any advantages that the Government can gain over the object of its pursuit by doing the forbidden act. *Weeks* v. *United States*, 232 U. S. 383, to be sure, had established that laying the papers directly before the grand jury was

unwarranted, but it is taken to mean only that two steps are required instead of one. In our opinion such is not the law. It reduces the Fourth Amendment to a form of words. 232 U. S. 393. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed. The numerous decisions, like *Adams* v. *New York*, 192 U. S. 585, holding that a collateral inquiry into the mode in which evidence has been got will not be allowed when the question is raised for the first time at the trial, are no authority in the present proceeding, as is explained in *Weeks* v. *United States*, 232 U. S. 383, 394, 395. Whether some of those decisions have gone too far or have given wrong reasons it is unnecessary to inquire; the principle applicable to the present case seems to us plain. It is stated satisfactorily in *Flagg* v. *United States*, 233 Fed. Rep. 481, 483. In *Linn* v. *United States*, 251 Fed. Rep. 476, 480, it was thought that a different rule applied to a corporation, on the ground that it was not privileged from producing its books and papers. But the rights of a corporation against unlawful search and seizure are to be protected even if the same result might have been achieved in a lawful way.

*Judgment reversed.*

THE CHIEF JUSTICE and MR. JUSTICE PITNEY dissent.