# UNITED STATES of America, Appellee,

### v.

## Mike NELSON, Appellant.

### No. 78–1587.

United States Court of Appeals, Third Circuit.

Argued Jan. 10, 1979.

Decided March 8, 1979.

Rehearing Denied April 12, 1979.

Before HUNTER and GARTH, Circuit Judges, and BROTMAN,* District Judge.

### OPINION OF THE COURT

PER CURIAM:

Appellant Mike Nelson was convicted on December 16, 1977 of aiding and abetting the importation of a controlled substance, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 952(a) and 960. The facts of this case are fully set forth in the district court opin-

---

9. 570 F.2d at 1135 (footnote omitted).

* Honorable Stanley S. Brotman, United States District Judge for the District of New Jersey, sitting by designation.

ion denying defendant's pre-trial suppression motion. *United States v. Tussell,* 441 F.Supp. 1092 (M.D.Pa.1977).

The principal issue of this appeal is whether six tons of marijuana seized at the Mount Pocono Airport in Pennsylvania from a private airplane should have been suppressed as evidence. Appellant contends that the evidence was illegally seized because United States Customs Service agents, acting without a warrant, installed in the plane a locational tracking device called a "transponder," which they used to monitor the plane's route. While the district court held the use of the transponder to be constitutional under the circumstances of this case, it held alternatively that the customs agent at the airport possessed sufficient information, wholly independent of the transponder, to justify the warrantless marijuana seizure. We agree with the district court that there is sufficient independent basis to justify the seizure. Accordingly, we find it unnecessary to reach the constitutional issues relative to the transponder.

▆▆▆ For purposes of this appeal, the court will assume, without deciding, that appellant has standing to raise these fourth amendment claims.[1] It is well settled that the taint on evidence obtained as a result of an illegal search and seizure may be purged if the government can prove that it learned of the existence of the evidence from an "independent source." *Wong Sun v. United States,* 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962), quoting *Silverthorne Lumber Co., Inc. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1919). The independent source rule applies in cases where the illegal search and seizure involves electronic wiretapping. *See Alderman v. United States,* 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939); *United States v.*

*Houltin,* 566 F.2d 1027, 1031 (5th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 97, 58 L.Ed.2d 118 (1978). Even assuming, without deciding, that the installation and/or monitoring of the airplane violated appellant's fourth amendment rights, the marijuana to which appellant objects was seized by the use of information " 'sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun v. United States, supra,* 371 U.S. at 488, 83 S.Ct. at 417.

The trial court found that the information received by Customs Agent Wunder during his month-long investigation—information unrelated to the use of the transponder—was adequate for the agent to have intercepted the plane upon its arrival at the airport. Agent Wunder specifically testified at the suppression hearing that the information received from his informant at the Mount Pocono Airport and from the Florida customs authorities "would have put me in that field" on the night of the seizure.[2] The district court's factual determination is not clearly erroneous, resting on ample support in the record.

However, even if the airport seizure was the product of independent information, as a warrantless seizure it cannot be justified unless it falls into one of the exceptions to the fourth amendment's warrant requirement. The district court upheld this seizure as a border search, ruling that sources independent of the transponder provided adequate information to Agent Wunder to satisfy the criteria for this exception to the warrant requirement. The record supports the district court's determination. Agent Wunder's testimony at the suppression hearing establishes that the information provided by his informant at the airport and by the Florida authorities gave him a reasonable certainty that the flight was arriving at Mount Pocono nonstop from abroad, making the airport a "functional equivalent" of a border.[3] The same sources

---

1. *See Rakas v. Illinois,* —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

2. Transcript of suppression hearing, pp. 192–93. *See also* pp. 186–91, 195, 197–98, 207, 223, 233–34, 241.

3. *See Almeida-Sanchez v. United States,* 413 U.S. 266, 273–74, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). *See also United States v. Ivey,* 546 F.2d 139 (5th Cir.), *cert. denied,* 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263 (1977); *United States v. Potter,* 552 F.2d 901 (9th Cir. 1977)

of non-transponder-related information gave Agent Wunder sufficient basis for belief that international drug smuggling in violation of customs laws was in progress.[4]

Appellant raises two other contentions, first that the verdict as to aiding and abetting was contrary to law and second that the trial court erred in denying his motion for severance. We find no merit in either of appellant's arguments. Accordingly, the judgment of the district court will be affirmed.

(both court of appeals cases applying the functional equivalent of a border doctrine with respect to non-commercial aircraft).

**4.** *See United States v. Diaz,* 503 F.2d 1025 (3rd Cir. 1974) (per curiam); *United States v. Beck,* 483 F.2d 203 (3rd Cir. 1973), *cert. denied,* 414 U.S. 1132, 94 S.Ct. 873, 38 L.Ed.2d 757 (1974).